UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **RAMONA MARCEAUX** | * | **CIVIL ACTION NO. 14-3281** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE** WHITEHURST |

**REPORT AND RECOMMENDATION**

  This social security appeal was referred to me for review, Report and Recommendation, pursuant to this Court's Standing Order of July 8, 1993.  Ramona Marceaux, born February 1, 1960, filed applications for a period of disability, disability insurance benefits, and supplemental security income on September 3, 2009, alleging disability as of February 15, 2009, due to knee problems, bulging discs, and panic disorder.  After Administrative Law Judge ("ALJ") Lawrence T. Ragona denied the applications at the administrative level (Tr. 44-52), claimant filed an action for judicial review in this Court on May 8, 2012.  *Marceaux v. Astrue*, No. 6:12-cv-1180.

  On April 11, 2013, Magistrate Judge C. Michael Hill issued a Report and Recommendation recommending that this case be remanded to the hearing level with instructions to the Administrative Law Judge: (1) to re-contact Dr. Henry Lagarde for clarification, or have one of claimant's treating physicians or another consultative examiner issue an opinion regarding claimant's mental residual functional capacity ("RFC"), and (2) to assess claimant's physical residual functional capacity.  [rec. doc. 12].  By Judgment entered on May 29, 2013, Judge Richard T. Haik adopted the Report and Recommendation and remanded this case to the Commissioner for further administrative action.  [rec. doc. 13].

While the appeal was pending in this Court, claimant filed subsequent applications for benefits on May 12, 2012. (Tr. 628-33; 635-36). By Order dated July 8, 2013, the Appeals Council merged claimant's new applications for benefits with the previous applications, as they were rendered duplicative by the remand of her original claims. (Tr. 520-22).

On February 19, 2014, ALJ Ragona held a second administrative hearing. (Tr. 452-89). On August 15, 2014, he issued a second unfavorable decision. (Tr. 399-415). After the decision became final, claimant filed the instant action in this Court on November 14, 2014.

## FINDINGS AND CONCLUSIONS

### I. STANDARD OF REVIEW

The Court limits its review of a denial of disability insurance benefits to two issues: (1) whether the Secretary applied the proper legal standards, and (2) whether the Secretary's decision is supported by substantial evidence on the record as a whole. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Wingo v. Bowen*, 852 F.2d 827, 829 (5th Cir. 1988).

The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971). Substantial evidence is defined as more than a mere scintilla. *Id.*, 402 U.S. at 401, 91 S.Ct. at 1427. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

The Court may not, however, reweigh the evidence or substitute its judgment for that of the administrative fact finder. *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). If substantial evidence supports the administrative finding, the Court may then only review whether

the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations. *Id*. at 393.

## II. BURDEN OF PROOF

Disability is defined as " inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  The existence of such disability must be demonstrated by medically acceptable clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant.  *Cook*, 750 F.2d at 393.

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. *Ramirez v. Colvin*, 606 F. App'x 775, 778 (5th Cir. 2015).  The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof is on the claimant at the first four steps. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301-02 (5th Cir. 1987).  If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that he could not perform the alternative work identified. Id. at 1302.  Throughout the process, the ultimate burden

of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

### III. ANALYSIS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability.

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence, based on the following:[1]

### A. Medical Evidence

On remand, the Court first ordered the ALJ to re-contact Dr. Henry Lagarde for clarification, or have one of claimant's treating physicians or another consultative examiner issue an opinion regarding claimant's mental residual functional capacity.

Claimant underwent her first consultative evaluation with Dr. Lagarde on December 15, 2009. (Tr. 315). At that time, she was taking Venlafaxine for depression, Lortab for pain, Meloxicam for spine inflammation, and Klonopin for anxiety. (Tr. 316). On examination, she maintained attention and concentration. She had good capability for memory. She was oriented in all spheres.

At times, claimant would cry while talking, and at other times she was calm while smiling. Her affect, although variable, was appropriate to issues discussed and well-modulated.

---

[1] Although all of the medical records were reviewed by the undersigned, only those relating to the arguments in the briefs on remand are summarized herein.

4

Capacity for judgment and insight were intact with good understanding of social norm expectations.

Claimant reported anxiety attacks since a truck accident which had occurred in 1996. She was taking college courses via computer at University of Phoenix and also went to the Lafayette campus four times per week. She was currently attending the New Iberia Mental Health Center, and had been attending the Baton Rouge Mental Health Center for more than two years. She had also seen two different social workers in Lafayette associated with post-traumatic symptomology which occurred after the truck accident.

Claimant reported that she often felt depressed and anxious, and was easily upset because of not being able to work. (Tr. 317). She had regular difficulty falling asleep because of back pain, and reported frequent early morning awakening. She reported trouble concentrating on her school work.

Although claimant did maintain adequate attention and concentration in her mental status exam, she reported frequent fatigue. At the same time, she reported herself as "a jokester" who enjoyed spending time with friends. She was eating adequately and had adequate self-esteem. She claimed that medicine significantly helped her anxiety but was not as helpful regarding depression.

Claimant cried when discussing post-traumatic symptomology associated with the truck accident. She claimed to have thoughts about the accident a few times a week. She was also sad about being terminated from her job after the accident. Her thoughts were intrusive in the sense that she had trouble putting them out of her mind. She reported difficulty driving as before, sometimes feeling that an accident would occur again. She was reminded of the accident when

hearing reports about such matters in the media. She did not think or dream about her childhood abuse very often.

Dr. Lagarde concluded that claimant's mental health status examination indicated that she maintained excellent cognitive capability with good capability for attention and concentration. She was feeling significantly depressed and anxious, and also reported significant post-traumatic symptomology concerning the truck accident. At the same time, she successfully maintained a positive attitude about herself and about life. Additionally, although she was quite depressed and anxious at times, she would then work through the mood.

Dr. Lagarde's diagnosis was major depressive disorder, single episode, and post-traumatic stress disorder, delayed. He opined that claimant was able to understand, remember, and carry out simple, detailed instructions. (Tr. 318). He stated that it did appear that, although claimant reported pursuit of an accounting degree, she would have difficulty attending satisfactorily to simple tasks for two-hour blocks of time. The reason he gave was the intrusive mood symptomology including frequent crying. He stated that for this reason, she would also appear to have difficulty maintaining persistence and consistency at a full-time job. He found that she would have difficulty coping with routine work stressors without becoming overly emotional, and it would occasionally negatively affect her relationships with supervisors and co-workers. Her Global Assessment of Functioning ("GAF") score was 55, moderate.[2] (Tr. 319).

---

[2] The GAF scale is used to rate an individual's "overall psychological functioning." *Credit v. Astrue*, 2011 WL 4373229, at *7 n. 12 (S.D. Tex. Sept. 2, 2011), *report and recommendation adopted*, 2011 WL 4370035 (S.D. Tex. Sept. 19, 2011) (citing American Psychiatric Institute, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), p. 32 (4th ed.1994). The scale ascribes a numeric range from "1" ("persistent danger of severely hurting self or others") to "100" ("superior functioning") as a way of categorizing a patient's emotional status. *Id*. A GAF of 51-60 is defined as "[m]oderate symptoms (*e.g.* flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, no friends, unable to keep a job). *Guillory v. Astrue*, 2013 WL 869395, at *5 (W.D. La. Feb. 1, 2013), *report and recommendation*

Claimant was treated at Iberia Behavioral Health Center for anxiety, depression, and panic attacks. On January 3, 2012, she was depressed and overwhelmed with crying spells. (Tr. 764). Her diagnosis was panic disorder without agoraphobia.

On November 16, 2012, claimant's symptoms were stable with Effexor, but she had increased anxiety and insomnia, and was not responding to Vistaril. (Tr. 760). Dr. Patrice Ambrose's assessment was major depressive disorder, panic disorder, and symptoms of PTSD. (Tr. 761). Claimant's GAF score was 60. Claimant reported continued anxiety on January 14, 2013. (Tr. 758).

On remand, Dr. Lagarde re-examined claimant on March 18, 2014, on referral of her attorney, Matthew Lane. (Tr. 780). At that time, she was able to perform all dressing and grooming activities; had limited ability to cook on a stove by herself, and could prepare simple meals, such as cereal and sandwiches. She spend time at home reading and watching television, but was unable to sit for very long. Her friend and a sister did her household chores for her.

Claimant enjoyed spending time with her sisters. She attended church once a month depending on her physical capability. She was able to handle money and make correct change; shop alone at a store near her house and with friends at larger stores, and had a driver's license. She was self-employed seasonally for tax preparations and occasionally as a notary. (Tr. 783).

Claimant had been attending New Iberia Mental Health Center for more than four years,

---

*adopted*, 2013 WL 869390 (W.D. La. Mar. 7, 2013); (*citing* DSM-IV, p. 32); *Denney v. Colvin*, 2014 WL 169647, at *4 (N.D. Tex. Jan. 15, 2014).

and was transferring to Tyler Mental Health Center in Lafayette. (Tr. 781). She was receiving treatment for panic disorder and anxiety from a 1996 truck accident. She had also attended the Baton Rouge Mental Health Center for the same problems.

On examination, claimant maintained adequate attention and concentration. Immediate and delayed memory were good, and working memory was fairly good. She was oriented in all spheres. Abstract thinking and reasoning were fairly good.

Claimant's affect was depressed, and she often teared or cried during the evaluation. Her capacity for judgment and insight was intact.

Dr. Lagarde stated that claimant was manifesting depression associated with lifestyle changes and reported chronic pain. (Tr. 783). She also experienced some panic attacks when driving because of the truck accident. She also had some posttraumatic stress about the accident.

Dr. Lagarde's diagnoses were major depressive disorder, single episode; post-traumatic stress disorder, delayed; specific phobia, situational type, and cannabis abuse, in full remission (by client report). His impression about work adjustment was similar to his impressions based on the 2009 evaluation. He stated that her major obstacle to full-time employment would be the mood symptomology with regular anxiety and tearing/crying. Mental status examination indicated that she could understand and remember simple, detailed instructions, but would have difficulty consistently carrying them out because of her mood symptoms. He also noted that for the same reason, she would have difficulty concentrating on routine tasks for two-hour blocks of time.

Additionally, Dr. Lagarde stated that claimant would have much difficulty coping with routine stress at work, and would have trouble consistently maintaining effective relationships with supervisors and coworkers.  He also noted that her mood symptomology would improve if she were able to be gainfully employed, because she would feel more productive and would presumably have less financial stress.

Dr. Lagarde concluded that "[t]here is caution noted about the above opinions."  He noted that her medical situation was "confusing," citing as an example that she did not report falling in a casino during the previous evaluation.  (Tr. 784).  Therefore, he found it important that "medical condition be fully clarified before decisions about disability."  Her GAF score was 55 Moderate.  (Tr. 785).

After the filing of claimant's subsequent applications, Cathy Castille, Ph.D., prepared a Mental RFC Assessment for Disability Determinations Services dated July 9, 2012.  (Tr. 531-32).  She found that claimant had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.  (Tr. 532).  She concluded that claimant did not seem to have more than a mild mental impairment which was being controlled by medication.

In the second part of the remand order, the Court ordered the ALJ to assess claimant's physical RFC.  The only report which specifically addresses claimant's RFC on remand is the assessment performed by Dr. Charles Lee on July 9, 2012, in which he determined that claimant could lift and or carry up to 10 pounds occasionally and less than 10 pounds frequently; stand/walk for a total of two hours, and sit about six hours in an eight-hour workday.  (Tr. 533,

544). He also found that she could occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl, but never climb ladders/ropes/scaffolds/due to left knee and back pain. (Tr. 534, 545).

### B. Hearing Testimony

At the hearing on February 19, 2014, claimant was 54 years old. (Tr. 456). She was five feet three inches tall, and weighed about 185 pounds. She stated that she had lost 20 pounds over the last seven months.

Claimant testified that she had a GED. (Tr. 464). She also had a Bachelor's Degree in business management and accounting. She had past work experience as a transportation broker, dispatcher, truck driver, and convenience store manager. (Tr. 465). She stated that she could no longer work as a dispatcher because of her anxiety. (Tr. 465-66).

Currently, claimant was doing notary and tax work for a few customers, making around $200 per month. (Tr. 457). She stated that she could not do tax returns for more than eight hours per week, because she could not sit for long periods and had had trouble concentrating. (Tr. 457-58, 461).

Regarding complaints, claimant stated that she had knee problems, for which she used a cane, and incontinence. (Tr. 479). She reported that she was not seeing any doctor on a regular basis, because there was no orthopedist at UHC. (Tr. 462, 480). She stated that she was still having anxiety, daily crying spells, and panic attacks at least twice a month. (Tr. 476-78). She said that she went to New Iberia Mental Health every three months for treatment. (Tr. 481).

As to restrictions, claimant testified that she could sit for about 30 to 45 minutes before she had stiffness and muscle cramps in her legs and back. (Tr. 458). She stated that she could

stand for 15 to 20 minutes, and walk about 400 feet.

Regarding activities, claimant reported that she drove to the store, but driving sometimes triggered her anxiety. (Tr. 463, 475). She stated that she watched television, read, attended church, and did a weekly Bible study at her home. (Tr. 467). She also helped indigent people with their taxes. (Tr. 467-68)

The vocational expert ("VE"), Wendy P. Klamm, classified claimant's past employment as a truck dispatcher/broker as sedentary with a Specific Vocational Preparation ("SVP") of 5; bookkeeper as sedentary with an SVP of 6; terminal manager as sedentary with an SVP of 8, and tax preparer as sedentary with an SVP of 4. (Tr. 485). The ALJ posed a hypothetical in which he asked the VE to assume a claimant of the same age, education and work experience; who was limited to sedentary work, meaning that she could lift and carry 10 pounds occasionally, five pounds frequently, and stand and walk for a total of two hours and sit for six hours in an eight-hour workday, and could do detailed but not extremely complex work because of her inability to stand stress. In response, Ms. Klamm testified that claimant could not work as a dispatcher, but could work as a receptionist, of which there were 8,700 jobs statewide and 603,650 nationally, and data entry clerk, of which there were 2,000 jobs statewide and 197,800 nationally. (Tr. 486).

When the ALJ changed to hypothetical to assume a claimant who would miss two days a month on a routine basis due to panic attacks, the VE testified that she could obtain employment, but would be unable to maintain it. (Tr. 486-87). Additionally, Ms. Klamm opined that claimant could not maintain employment if she had frequent crying spells occurring a couple of times a month which interfered with her ability to complete an eight-hour workday. (Tr. 487).

When claimant's attorney asked whether claimant would be able to maintain employment if she had frequent crying spells or intrusive mood symptomology which would interfere with her ability to perform simple tasks for two-hour blocks at a time for 25 percent of her workweek, Ms. Klamm responded "No."  He then inquired whether a claimant would be able to maintain employment if she otherwise had difficulty coping with routine work stressors without becoming overly emotional such that she would require unscheduled work breaks of one per day for 15 minutes per day, to which Ms. Klamm responded that she would not.  (Tr. 488-89).

### **C. Argument**

Claimant argues that: (1) the ALJ's evaluation of Dr. Lagarde's medical opinions is not supported by substantial evidence, does not meet controlling legal standards, and does not comply with the Court's remand Order, and (2) the ALJ omitted evaluation of the opinions of Dr. Charles Lee; consequently, his RFC is not supported by substantial evidence and was reached through the application of improper legal standards.  Because I find that the ALJ failed to properly evaluate Dr. Lagarde's opinions, I recommend that this matter be **REVERSED** and that the claimant be awarded benefits.

The Court's remand Order directed the ALJ to (1) to re-contact Dr. Henry Lagarde for clarification, or have one of claimant's treating physicians or another consultative examiner issue an opinion regarding claimant's mental residual functional capacity, and (2) to assess claimant's physical residual functional capacity.

As to the first argument, claimant asserts that the ALJ failed to give Dr. Lagarde's significant weight as implied by the Court's remand Order, which constitutes legal error.

In the Decision, the ALJ noted that the district court "felt it necessary to 're-contact' Dr. Lagarde to obtain 'clarification' of his conclusions."[3] (Tr. 411). While the ALJ referenced Dr. Lagarde's updated opinion, he failed to mention that it was claimant's attorney, not the ALJ, who re-contacted Dr. Lagarde for the evaluation. He then stated that after reviewing Dr. Lagarde's previous evaluation in conjunction with his latest assessment, his conclusions regarding Dr. Lagarde's findings had not changed, reasoning as follows:

> [Dr. Lagarde] seems to have based the bulk of his findings upon the claimant's subjective allegations and reports, some of which appear embellished already discussed. Moreover, his GAF of 55 (indicative of moderate – not serious – limitations, and therefore not completely debilitating) simply does not square with his conclusions that she would have difficulty consistently carrying out instructions, concentrating on routine tasks for two hour blocks of time, coping with routine stress at work, and maintaining effective relationships with supervisors and coworkers. If taken at full face value, these latter factors would essentially prevent the claimant from the performance of all work – an end result not warranted by such a GAF. Furthermore, the doctor admonished me to use "*caution*" in evaluating his opinions regarding the claimant's overall functional status because of the "*confusing*" nature of the claimant's overall status (Id. pp. 5-6), citing her omission to him of her previous slip/fall accident. This statement suggests further attenuation between his conclusions and the claimant's actual level of functioning.

(Tr. 411-12).

Dr. Lagarde also indicated, however, that his own opinion had not changed regarding claimant's ability to work. Specifically, he said that his "[i]mpression about work adjustment is similar to impressions based on the previous evaluation dated December 15, 2009." (Tr. 783).

---

[3] The regulations regarding "recontacting medical sources" in 20 C.F.R. 404.1512(e) have changed since the ALJ's previous decision. *Colegrove v. Colvin*, 2015 WL 9582909, at *8 (N.D. Tex. Dec. 14, 2015), *report and recommendation adopted*, 2015 WL 9581835 (N.D. Tex. Dec. 30, 2015) (*citing* Requirement to Recontact Medical Sources, 77 Fed.Reg. 10,651, 10,655, 10,656 (Feb. 23, 2012). Under the new regulations, the decision to re-contact a treating source is a matter within the ALJ's discretion, rather than mandatory. *Id*. (*citing* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(l)).

He stated that claimant's medical condition was "confusing," citing as an example that she did not report falling in a casino during the previous evaluation. He concluded that, therefore, it was "important that medical condition be fully clarified before decisions about disability." (Tr. 784). The ALJ found that this statement "suggests further attenuation between [Dr. Lagarde's] conclusions and the claimant's actual level of functioning." (Tr. 412).

Additionally, the ALJ discounted Dr. Lagarde's opinion based on the recent records from Iberia Mental Health, describing claimant's depression and "manageable," and assigning a GAF of 60 "indicating no more than a moderate level of functional loss." The ALJ noted that while claimant continued to experience some symptoms, evidence of her "improving condition" was repeatedly indicated. The ALJ failed to mention, however, that while claimant's depressive symptoms were stable with Effexor, she had "worsening" anxiety. (Tr. 761).

Regarding the non-examining DDS consultative mental examination, the ALJ declined to give it significant evidentiary weight with respect to the degree of concentration, persistence and pace and the finding of non-severity. (Tr. 410). However, he gave the remainder of the consultant's opinion "great weight" insofar as it found claimant not disabled.

It is well established that the opinion of an examining physician should be accorded greater weight than the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Further, it is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded *great weight* in determining disability. (emphasis added). *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995).

Here, the ALJ gave "great weight" to the opinion of the non-examining DDS psychologist, but discounted the opinion of the examining consultative psychologist, Dr. Lagarde.  On judicial review, the Court specifically directed the ALJ to re-contact Dr. Lagarde, or another one of claimant's *treating* physicians or another *consultative* examiner, to give an opinion regarding claimant's mental functional capacity.  (emphasis added).  Despite the express order of the Court, the ALJ did not do so.  Rather, claimant's attorney undertook to set up the examination with Dr. Lagarde on his own initiative.

Both of Dr. Lagarde's reports indicate that claimant would be unable to sustain employment.  At the first examination in 2009, Dr. Lagarde opined that claimant would have difficulty attending satisfactorily to simple tasks for two-hour blocks of time, because of her intrusive mood symptomology including frequent crying.  (Tr. 318).  He stated that, for this reason, she would also appear to have difficulty maintaining persistence and consistency at a full-time job.  He found that she would have difficulty coping with routine work stressors without becoming overly emotional, and it would occasionally negatively affect her relationships with supervisors and co-workers.

On remand, Dr. Lagarde gave the same opinion that claimant's her major obstacle to full-time employment would be the mood symptomology with regular anxiety and tearing/crying.  (Tr. 783).  Her mental status examination indicated that she could understand and remember simple, detailed instructions, but would have difficulty consistently carrying them out because of her mood symptoms.  He also noted that for the same reason, she would have difficulty concentrating on routine tasks for two-hour blocks of time.  Additionally, Dr. Lagarde stated that

claimant would have much difficulty coping with routine stress at work, and would have trouble consistently maintaining effective relationships with supervisors and coworkers.

Dr. Lagarde's reports are uncontradicted by the medical evidence. In fact, the records from Iberia Behavioral Health Center, which indicate that claimant was still undergoing mental health treatment and having worsening anxiety, gives further support to his findings.

Further, the vocational expert's testimony confirms that claimant would not be able to maintain employment. When the ALJ asked whether a claimant who would miss two days a month on a routine basis due to panic attacks could maintain employment, Ms. Klamm responded that she could not. (Tr. 486-87). The VE also testified that claimant could not maintain employment if she had frequent crying spells occurring a couple of times a month which interfered with her ability to complete an eight-hour workday; had frequent crying spells or intrusive mood symptomology which would interfere with her ability to perform simple tasks for two-hour blocks at a time for 25 percent of her workweek, or otherwise had difficulty coping with routine work stressors without becoming overly emotional such that she would require unscheduled work breaks of one per day for 15 minutes per day. (Tr. 487-89).

A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002) (*citing Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986)). According to the consultative psychological examiner and the vocational expert, claimant would be unable to maintain gainful

employment. Thus, the ALJ erred in his determination that claimant retains the capacity to work full-time.

Next, claimant asserts that the ALJ erred in failing to evaluate the medical opinions of Dr. Charles Lee. The Commissioner concedes that the ALJ did not discuss or weigh Dr. Lee's physical RFC assessment.

> The Social Security Regulations provide:
>
> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges *must* consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence, except for the ultimate determination about whether you are disabled (see § 404.1512(b)(8)).

(emphasis added). 20 C.F.R. § 404.1527(e)(2)(I). The ALJ did not do so in this case, which constitutes error.[4]

The Commissioner argues that claimant cannot show prejudice from the ALJ's failure to consider Dr. Lee's RFC because the assessment is consistent with the ALJ's ultimate conclusion that claimant could perform work as a receptionist or data entry clerk. In response, claimant argues that she was prejudiced, as Dr. Lee found restrictions in her ability to stoop, which would erode the occupational base.

---

[4]The Fifth Circuit has held that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *Newton*, 209 F.3d at 459. The Fifth Circuit requires, however, a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such failure will be permitted to serve as the basis for relief from an ALJ's decision. *Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001).

SSR 96-9p provides, in pertinent part, that:

> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

(emphasis in original). SSR 96-9P (July 2, 1996).

Dr. Lee found that claimant had limitations to occasional stooping only. According to the regulation, this should only minimally erode the unskilled occupation base for sedentary work. However, because of the undersigned's finding that claimant could not maintain employment due to her mental limitations, Dr. Lee's report is of no moment.

Accordingly, the undersigned recommends that the Commissioner's decision be **REVERSED**, and that the claimant be awarded appropriate benefits commencing February 15, 2009.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING**

**THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 22nd day of February, 2016, at Lafayette, Louisiana.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE